IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-20-00105-JD |
| ) | |
| CHRISTA LYNN GLASS, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant Christa Lynn Glass's Motion to Vacate JVTA Assessment ("Motion") [Doc. No. 82]. The United States filed a response in opposition [Doc. No. 83]. No reply was filed by Ms. Glass.

Ms. Glass asks the Court to vacate the $5,000 special assessment fee, which the Court imposed as part of Ms. Glass's sentence pursuant to the Justice for Victims of Trafficking Act ("JVTA"), 18 U.S.C. § 3014, on March 1, 2021. *See* Judgment [Doc. No. 53 at 7]. Ms. Glass asserts that she is indigent and that her indigency status excepts her from application of § 3014(a). The United States asserts that Ms. Glass has not met her burden in proving indigency for purposes of the JVTA special assessment.

For the following reasons, the Court denies the Motion.

**I.    BACKGROUND**

Ms. Glass pled guilty to and was convicted of conspiracy to commit child sex trafficking, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(c). Judgment at 1. Ms. Glass's plea agreement requires her to pay a "mandatory special assessment of

$5,100.00." [Doc. No. 25 at ¶¶ 2, 5]. On March 1, 2021, Ms. Glass was sentenced to a term of imprisonment of 180 months and 5 years of supervised release. Judgment at 2–3. The sentence included a $100.00 special assessment fee and an additional special assessment of $5,000 under the JVTA. *See id.* at 7. The Court stayed its restitution determination pending the Tenth Circuit's decision in *United States v. Anthony*, 22 F.4th 943 (10th Cir. 2022). [Doc. No. 64].

No specific objection was raised by Ms. Glass at sentencing to imposition of the $5,000 assessment. However, before imposing the sentence, the Court inquired of counsel whether the Court could consider Ms. Glass's future earning potential for purposes of § 3014. The Court noted based on the current findings in the PSR, which the Court had adopted, Ms. Glass lacked the current financial ability to pay the $5,000 assessment.

In response, government counsel asserted that several circuits had addressed the issue and concluded that a district court may consider a defendant's future earning potential when considering whether to order the JVTA assessment. Government counsel cited the following cases in her argument at sentencing: *United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020) (concluding that the district court had properly considered the defendant's future earnings potential in imposing the special assessment under § 3014); *United States v. Wandahsega*, 924 F.3d 868, 889 (6th Cir. 2019) (concluding that even if the defendant "should be classified as impoverished now, and even if he earns only a minimum hourly wage when released from prison, he has not demonstrated that he will be unable to pay the assessment in increments over a [20]-year period"); *United*

*States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1360 (2019) (explaining that district courts may consider future earning capacity in determining whether a defendant is subject to the mandatory special assessment under the JVTA); *United States v. Kelley*, 861 F.3d 790, 802 (8th Cir. 2017) (concluding that the district court had not erred in determining that the defendant would, at some point, be able to pay the special assessment); *United States v. Janatsch*, 722 F. App'x 806, 810–11 (10th Cir. 2018) (unpublished), *cert. denied*, 139 S. Ct. 131 (2018) (concluding the district court had not erred in determining that the defendant, who was serving a 360-month sentence, would have the ability to pay the special assessment in the future); *United States v. Bonilla*, 743 F. App'x 210, 216–17 (10th Cir. 2018) (unpublished) (explaining that the special assessment remains in force for 20 years following the judgment, or 20 years after release from imprisonment, whichever is later, and that defendant's deportation following imprisonment did not render him indigent absent a showing that he could not earn sufficient wages to pay the assessment while in Mexico).

Defense counsel asked the Court to consider ordering Ms. Glass to make payments of not more than 5 percent of Ms. Glass's earnings while in Bureau of Prisons' ("BOP") custody or after release from confinement (should Ms. Glass obtain a minimum wage job) toward payment of the JVTA special assessment. Ms. Glass's counsel emphasized that BOP wages are thin, and that Ms. Glass had received no support from her family while incarcerated the past year. She further stated that Ms. Glass would need money while incarcerated to purchase personal hygiene products and food.

The Court concluded that given Ms. Glass's current financial circumstances, Ms. Glass lacked the ability to pay a fine. Regarding the $5,000 special assessment, the Court concluded that Ms. Glass had not met her burden of showing indigency as the courts have interpreted that phrase for purposes of § 3014. Additionally, the Court adopted in full, as its own, the government's argument and cases cited in support. The Court ordered Ms. Glass to pay to the United States the $5,000 JVTA special assessment due immediately. *See* Judgment at 8. If Ms. Glass could not pay the JVTA special assessment immediately, then the Court ordered Ms. Glass to make payments of 10 percent of her quarterly earnings during her term of imprisonment; after release from confinement, if the JVTA special assessment is not paid immediately, the Court directed Ms. Glass to make payments of the greater of $25.00 per month or 10 percent of her gross monthly income with payments to commence no later than 30 days after release from confinement. *See id.*

On April 26, 2024, the parties filed a Joint Notice of Restitution Agreement [Doc. No. 97]. In light of the agreement reached, the Court struck the restitution hearing set for April 29, 2024. *See* Apr. 26, 2024 docket text. Ms. Glass now asks the Court to revisit the JVTA assessment since the Court will enter an amended judgment for restitution purposes. Motion at 2.

## II.  DISCUSSION

Section 3014(a)(1) provides that:

> Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on December 23, 2024, in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under—

4

(1) chapter 77 (relating to peonage, slavery, and trafficking in persons) . . . .

*See* 18 U.S.C. § 3014(a)(1). Ms. Glass pled guilty to violating 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(c), which fall within Chapter 77. Thus, she is subject to the mandatory special assessment unless she shows that she is indigent for purposes of the JVTA. *See Janatsch*, 722 F. App'x at 811 (explaining that the district court "reasonably found [the defendant] had not met his burden of proving indigency for purposes of [§ 3014]"); *see also United States v. Matalka*, 788 F. App'x 273, 273 (5th Cir. 2019) (unpublished) (explaining that the burden is on the defendant to prove indigency); *Wandahsega*, 924 F.3d at 889–90 (citing USSG § 5E1.2 and explaining that because the assessment in § 3014 "is akin to a fine imposed as part of a sentence," "the defendant bears the burden of proving indigency"); *United States v. Coulter*, Case No. CR-18-156-D, 2024 WL 388132, at *6 (W.D. Okla. Feb. 1, 2024) (recognizing that the burden is on the defendant to prove indigency for purposes of the JVTA special assessment).

Although Ms. Glass concedes that she made "no objection to the Court's Order of the $5,000 assessment," she asserts that the "order is inconsistent with the adoption of the PSR . . . and Ms. Glass' inability to pay such a fine." Motion at 2. Additionally, Ms. Glass points to the fact that she qualified for court-appointed counsel as support for a finding of indigency here. The Court sees nothing in the Motion warranting reconsideration of the Court's prior determination that Ms. Glass had not met her burden of showing indigency.

Starting with the statutory text of § 3014(a), "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod.*

5

*Co. v. Burton*, 549 U.S. 84, 91 (2006). The "ordinary meaning of 'indigent' includes a forward-looking assessment of the defendant's means." *Graves*, 908 F.3d at 141 (concluding that the ordinary meaning of indigent "includes both someone who is poor today and someone who lacks the means to earn the necessaries of life in the future"). Thus, to determine whether a defendant is indigent, the Court "must resolve two basic questions: '(1) [i]s the defendant impoverished *now*; and (2) if so, does the defendant have the means to provide for himself so that he will *not always* be impoverished?'" *United States* v. *Norton*, 48 F.4th 124, 133 (3d Cir. 2022) (quoting *United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019)). Thus, the statutory text "supports allowing district courts to consider future wages, including prison wages, in making an indigency determination under § 3014." *Id.*

The statutory structure of § 3014 also supports a "forward-looking" analysis of "the defendant's future ability to pay." *Graves*, 908 F.3d at 141. The JVTA assessment is "collected in the same manner 'that fines are collected in criminal cases,' and terminate[s] [20] years from the entry of judgment or [20] years after the defendant is released from prison, whichever is later." *Norton*, 48 F.4th at 133 (quoting 18 U.S.C. §§ 3014(f), (g), and 3613(b)). "This long payment period 'underscores that a district court must impose the assessment unless it finds the defendant could not pay it today—or at any point for the next [20] years.'" *United States v. Rosario*, 7 F.4th 65, 71 (2d Cir. 2021) (quoting *Graves*, 908 F.3d at 141).

To that end, "it would make little sense for the district court to consider *only* the defendant's financial condition at the time of sentencing" because "[t]hat snapshot in

time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing." *Shepherd*, 922 F.3d at 758. Moreover, the United States Sentencing Guidelines explicitly consider a defendant's future earning capacity as relevant to determining indigency for purposes of imposing a criminal fine. *See, e.g.*, USSG § 5E1.2(a) (providing that a "court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is *not likely to become able to pay any fine*") (emphasis added).

Finally, it appears that those circuits that have addressed this issue all agree that the district court may consider a defendant's future earning potential in making an indigency determination under § 3014. *See, e.g.*, *Rosario*, 7 F.4th at 68, 70 (listing cases); *Norton*, 48 F.4th at 133–34 & n.29; *McMiller*, 954 F.3d at 675 (listing cases); *Graves*, 908 F.3d at 142 (listing cases); *Shepherd*, 922 F.3d at 758–59; *Wandahsega*, 924 F.3d at 889 (concluding that money earned while incarcerated is properly considered in assessing a defendant's ability to pay a special assessment under the JVTA); *United States v. Easterling*, 811 F. App'x 306, 310 (6th Cir. 2020) (unpublished) (affirming the assessment "even though [the defendant] most likely will spend the rest of his life in prison," because "incarceration does not necessarily mean that he cannot earn money in the future"); *Kelley*, 861 F.3d at 802 (recognizing that "even taking [the defendant's] negative net worth [at the time of sentencing] at face value," the defendant's ability to earn money in the future precluded a finding of indigency for purposes of § 3014); *Janatsch*, 722 F. App'x at 811 (explaining that "nothing in the statute precludes an examination of future ability to pay"); *Bonilla*, 743 F. App'x at 217 (holding that the

7

district court properly considered whether the defendant could "earn sufficient wages to pay the special assessment in due time").

In an effort to satisfy the indigency requirement, Ms. Glass notes that she qualified for court-appointed counsel. Although that fact "is *probative* of indigency, it is not *dispositive* of the issue because the standards for eligibility for appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, and for a finding of indigency under 18 U.S.C. § 3014 are different." *Easterling*, 811 F. App'x at 310 (citing *Shepherd*, 922 F.3d at 758–59); *United States v. de Hernandez*, 745 F.2d 1305, 1310 (10th Cir. 1984) (explaining that the magistrate judge applied the wrong standard when the magistrate found the defendant was "not . . . indigent" in denying court-appointed counsel rather than examining whether the defendant was "financially unable to obtain counsel"); *see also United States v. Nichols*, 841 F.2d 1485, 1506 (10th Cir. 1988) (explaining that a "defendant need not be 'indigent' to qualify for appointed counsel," but rather "he or she need only be 'financially unable to obtain counsel'"). "Financial inability is a lesser standard than indigency." *Nichols*, 841 F.2d at 1506. Thus, the standard for appointment of counsel under the CJA is easier to satisfy.

Additionally, Ms. Glass points to the Court's determination that she lacked the ability to pay a fine given her current financial circumstances as evidence she is indigent for purposes of the JVTA assessment. However, a finding of inability to pay a fine at the time of sentencing does not preclude Ms. Glass's ability to pay the JVTA assessment. *See, e.g.*, *Norton*, 48 F.4th at 134 (explaining that the district court "could have concluded that the imposition of the mandatory JVTA assessment of $5,000 rendered [the

8

defendant] unable to pay an additional, discretionary fine"); *Easterling*, 811 F. App'x at 310 (concluding the $5,000 assessment was proper even though the district court had waived imposition of any fine upon a finding the defendant was unable to pay a fine); *Wandahsega*, 924 F.3d at 889 (affirming the imposition of the assessment despite the district court's finding that the defendant "would be unable to pay a fine").

Although Ms. Glass is incarcerated and serving a term of imprisonment of 180 months, the Court "'must impose the assessment unless it finds that [Ms. Glass] could not pay it today—or at any point for the next [20] years.'" *Rosario*, 7 F.4th at 71 (quoting *Graves,* 908 F.3d at 141). Ms. Glass is 44 years old and has been incarcerated on this charge since her arrest on January 28, 2020. PSR at 2–3 [Doc. No. 34]. She has served a little more than 51 months of her 180-month sentence. If she serves the remainder of her sentence in full, she will be approximately 55 years old when she is released. If Ms. Glass serves 85 percent of her sentence, she will be approximately 53 years old when released.[1] At that time, she will be within the age range of adults who have not reached retirement age. Thus, she could realistically be able to work and pay the mandatory special assessment of $5,000 after she is released. Additionally, the Court can consider Ms. Glass's potential to earn prison wages in making an indigency determination under § 3014. *See Norton*, 48 F.4th at 133; *Wandahsega*, 924 F.3d at 889.

Ms. Glass has her GED, and she has prior experience working as a machine operator. *See* PSR at 3, 45–46. There is no evidence of record that Ms. Glass cannot

---

[1] The BOP website currently shows a release date of December 5, 2032, which would make Ms. Glass 53 years old upon her release.

9

work; she reported no physical disabilities and that she was "healthy." *See id.* at 43. Although Ms. Glass has agreed to pay restitution in the total amount of $25,000, the JVTA assessment is not payable until Ms. Glass "has satisfied [any] order[] of restitution" first. *See* 18 U.S.C. § 3014(b). Based on the authorities cited above, and evidence of record, the Court finds no reason to reconsider its earlier determination that Ms. Glass has not met her burden of proving indigency under the statute or vacate the $5,000 JVTA special assessment.

### III.   CONCLUSION

Accordingly, the Court denies Defendant Christa Lynn Glass's Motion to Vacate JVTA Assessment [Doc. No. 82]. An amended judgment will follow, however, to reflect the Restitution Agreement. *See* [Doc. No. 97].

IT IS SO ORDERED this 6th day of May 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE